STATE of Missouri, Respondent,

v.

Bertrand J. HOLBERT, Appellant.

No. 51640.

Supreme Court of Missouri,
Division No. 2.

June 12, 1967.

Motion for Rehearing or to Transfer to Court
en Banc Denied July 10, 1967.

Norman H. Anderson, Atty. Gen., Jefferson City, Gene B. Rosen, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Arthur Litz, St. Louis, for appellant.

EAGER, Judge.

Defendant was found guilty by a jury of the crime of carrying a concealed weapon, namely, a .32 caliber revolver; the jury was unable to agree on the punishment and the Court, acting under § 546.440, RSMo 1959, V.A.M.S. (to which revision all statutory citations will refer), sentenced defendant to a term of two years in the penitentiary. After an unavailing motion for new trial, he appealed. The appeal has wandered through a rather devious course; defendant was represented at the trial by privately employed counsel who withdrew after taking the appeal; his next employed counsel encountered difficulties with our disciplinary processes and surrendered his license. Considerable delay thus occurred before the filing of the transcript and thereafter we required that counsel be appointed to prosecute the appeal, in compliance with the ruling in Bosler v. Swenson (C.A. 8), 363 F.2d 154. Counsel was appointed and he has represented the defendant in a very efficient manner.

On July 24, 1964, at about 8:30 a.m., Officer Paul Heinzel, cruising near Hodiamont and Theodosia in the City of St. Louis, noticed a congestion of traffic and went to that location. He found defendant sitting alone in his Chevrolet car, which was stalled in the middle of the intersection, blocking traffic; he got out and walked over to defendant and asked him what the trouble was. He then saw a "gun butt" sticking out of defendant's left shirt pocket; defendant did not have on a coat. The officer at that time placed defendant under arrest for "carrying a gun," reached in and took the pistol, had defendant get out of the car and handcuffed him; he found that the revolver, a .22 caliber of German make, was loaded and proceeded to search the defendant. He thus found a .32 caliber Iver-Johnson revolver fully concealed in defendant's left rear trousers pocket; the officer then searched the car. He found another revolver, a .22 caliber Rohn, under the cushion of the front seat on the driver's side; he also found a brief case containing about $3,700, a pair of binoculars and some radio equipment. Defendant was asked why he carried the guns and his answer was that it was done for his protection because he carried "a large amount of money around." The officer recognized defendant as the operator of the West End Pharmacy nearby, and defendant stated that the money represented receipts from the Pharmacy. For whatever it may be worth, the evidence showed that there was a bank two or three blocks from the scene. All three pistols were identified at the trial by the arresting officer; all were loaded when found. They were referred to in detail at the trial over objections, beginning with the State's opening statement. They were displayed in marked bags on the counsel table during the trial, they were described and referred to in detail by the two police witnesses, they were all passed to the jury, and they were emphasized repeatedly in the State's final arguments.

Sgt. Donald Brocksmith testified that he had examined, tested and fired all three of the pistols and that each was "operational," i. e., it would fire. Counsel for defendant objected to the admission of the revolvers identified as Exhibits 1 (found in the shirt pocket) and 3 (found under the cushion), but when Exhibit 2 (the Iver-Johnson found in defendant's hip pocket which was the basis of the present charge) was offered, defendant's counsel said to the Court: "I have no objection to the introduction into evidence of State's Exhibit 2"; he then made detailed and very specific objections to the other two guns, principally for the reasons that they were irrelevant, that they tended to prove other offenses, that they were not admissible to prove intent on the present charge, and that they were inflammatory and were offered to create prejudice. The Court overruled the objections.

At the close of the State's evidence defendant's motion for acquittal was overruled and he offered no evidence. Prior to trial, defendant had filed and presented a motion to suppress evidence of the articles taken from his person and his car at the time of his arrest; this was done on the theory that the officer had no warrant for his arrest, that defendant was committing no act which would justify his arrest, that there was no probable cause for his arrest, and that the search was not incident to a lawful arrest. The testimony of Officer Heinzel was heard on that motion, substantially as already recited, and the motion was overruled. Apparently the motion was directed generally at all the articles taken, in reliance upon the Fourth and Fifth Amendments to the Federal Constitution and Art. 1, § 15 of the Missouri Constitution.

■ Of the four points raised by defendant we shall only need to consider two. The one lying at the very threshold of the case is the contention that the arrest was unlawful, that the search was unreasonable and violative of constitutional rights, and that the Court erred in overruling the motion to suppress all evidence relating to the .32 caliber revolver upon which this charge is based. Counsel cites State v. Cuezze, Mo., 249 S.W.2d 373, State v. Scanlan, 308 Mo. 683, 273 S.W. 1062, and State v. Bordeaux, Mo., 337 S.W.2d 47. The point actually made is that the revolver in defendant's shirt pocket was not concealed, that its possession constituted no crime, that there was no reasonable ground to suspect defendant of committing *any* crime, and that no crime in the neighborhood had been reported to the arresting officer. The State has cited State v. Cantrell, Mo., 310 S.W.2d 866, State v. Reagan, Mo., 328 S.W.2d 26, and State v. Durham, Mo., 367 S.W.2d 619, as indicating circumstances which justify an arrest, and, therefore, as permitting a search reasonably incident to the arrest. We do not find it necessary to rule upon the legality of this arrest. The point is only made as

to Exhibit 2, the .32 caliber revolver, and on the overruling of the motion to suppress evidence as to *it*. When that exhibit was offered, defendant's counsel expressly stated to the Court, as quoted above, that he had *no objection* to its introduction into evidence. This, we rule, was an affirmative waiver of the contentions made in the motion to suppress and of the ruling thereon, insofar as that exhibit was concerned. In State v. Hepperman, 349 Mo. 681, 162 S.W.2d 878, loc. cit. 886, the Court said: "After counsel asked the court to pass on the motion to suppress, no other or further objection was made to the admission of the exhibit for the reason it had been obtained in violation of the defendant's constitutional guaranty against unreasonable search and seizure. * * * But aside from all this there was no error in the admission of the evidence and the overruling of her motion to suppress. Whether or not the evidence was unlawfully obtained was a question to be determined on the motion to suppress. State v. Owens, 302 Mo. 348, 259 S.W. 100, 32 A.L.R. 383. After the motion is overruled the defendant keeps the question alive by timely objection (State v. Tunnell, 302 Mo. 433, 259 S.W. 128; State v. Hefflin, 338 Mo. 236, 89 S.W.2d 938, 103 A.L.R. 1301) but the court does not then interrupt the trial to pass on the legality of the search and seizure but only determines whether the evidence is competent and relevant. State v. Owens, supra." The waiver there apparently consisted of the cross-examination of a witness concerning the disputed exhibit, before again asking the Court to strike the exhibit. We need not rule here whether a mere *failure to object* to the exhibit, after the overruling of a motion to suppress, is a waiver in itself; Hepperman, supra, indicates that it is. And see also Chandler v. State, 89 Ind.App. 304, 166 N.E. 289; Robertson v. State, 94 Fla. 770, 114 So. 534; Dukes v. Commonwealth, 196 Ky. 60, 244 S.W. 74; State v. Hartness, 147 Wash. 315, 265 P. 742; Fraterrigo v. State, 151 Fla. 634, 10 So.2d 361. In the case of State v. Durham, Mo., 367 S.W.2d 619, loc.

cit. 623, the Court held that the search complained of was fully justified by an Illinois statute and that the motion to suppress was properly overruled. We do not consider the Court's statement there, namely: "Assuming that no objection at the time the items were offered in evidence was necessary to preserve for appellate review the ruling on the motion to suppress, see State v. Windsor, Mo.App., 289 S.W. 663, defendant has not demonstrated an unreasonable search and seizure." as a direct ruling that no such objection is necessary, nor is the case cited there applicable to the facts here. We hold that Exhibit 2 was properly admitted because of defendant's affirmative waiver; and it was certainly relevant. By analogy see also State v. Bray, Mo.App., 278 S.W.2d 49, 52. The purpose of a motion to suppress is to prevent the use of a questioned article in evidence. The overruling of such a motion merely makes it available to the State, subject to objections as to relevancy, etc. If counsel affirmatively withdraws all objections, no ruling concerning the article can thereafter be preserved for review.

■ The situation is entirely different, however, with reference to the use of Exhibits 1 and 3. The use of and references to these exhibits was specifically objected to throughout the trial, and defendant's possession of them was consistently kept before the jury throughout the trial. Cases cited by the State involved articles which logically had some inherent connection with the offense for which the defendant was on trial. State v. Thomas, Mo., 360 S.W.2d 694; State v. Evans, Mo., 237 S.W.2d 149; State v. Small, Mo., 344 S.W.2d 49. Defendant cites cases holding that, generally, evidence tending to prove other crimes is inadmissible, State v. Reese, 364 Mo. 1221, 274 S.W.2d 304, State v. Griffin, Mo., 336 S.W.2d 364, State v. Atkinson, Mo., 293 S.W.2d 941, State v. Summers, Mo., 362 S.W.2d 537, and insists that the admission and exhibition of these exhibits was wholly irrelevant to the offense on trial, that they tended to (and were in-

tended to) convince the jury that defendant had committed other crimes and that they were highly prejudicial. It seems obvious that the possession of the pistol found under the seat might have been the basis of a different and independent charge. One of the best statements of the rule and its exceptions is found in the case of State v. Reese, 364 Mo. 1221, 274 S.W.2d 304, at loc. cit. 307: " 'The well established general rule is that proof of the commission of separate and distinct crimes is not admissible, unless such proof has some legitimate tendency to directly establish the defendant's guilt of the charge for which he is on trial. * * * Evidence of other crimes, when not properly related to the cause on trial, violates defendant's right to be tried for the offense for which he is indicted.' State v. Shilkett, 356 Mo. 1081, 204 S.W.2d 920, 922–923. Exceptions to this general rule of exclusion are as well established as the rule itself. * * * 'Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the other; (5) the identity of the person charged with the commission of the crime on trial.' The test of whether evidence of other distinct crimes falls within any of these exceptions has been aptly stated as follows: 'The acid test is its logical relevancy to the particular excepted purpose or purposes for which it is sought to be introduced. If it is logically pertinent in that it reasonably tends to prove a material fact in issue, it is not to be rejected merely because it incidentally proves the defendant guilty of another crime. But the dangerous tendency and misleading probative force of this class of evidence require that its admission should be subjected by the courts to rigid scrutiny."

■ The State contends that these exhibits and the evidence concerning them were properly received on the question of

intent; counsel have cited nothing but generalities, so far as the circumstances of this case are concerned. The cases which we have independently reviewed indicate that proof of the offense of carrying a concealed weapon as prohibited by § 564.610 merely requires evidence of an intent to *conceal* the gun or to carry it concealed, and that this is presumed from a demonstrated concealment. State v. Conley, 280 Mo. 21, 217 S.W. 29; State v. Hovis, 135 Mo.App. 544, 116 S.W. 6; State v. Carter, 259 Mo. 349, 168 S.W. 679; State v. Charles, Mo., 268 S.W.2d 830; State v. Crone, Mo., 399 S.W.2d 19; State v. Barker, Mo., 249 S.W. 75; and see also, State v. Gibson, 322 Mo. 369, 15 S.W.2d 760, where the Court said, loc. cit. 761: "It is suggested that the act itself carries with it the presumption of the intent. Doubtless that would be true, if the defendant consciously concealed the weapon." The evidence was not relevant on the question of intent or motive, or on the basis of any of the other exceptions to the general rule. Considered in this light the argument of defense counsel concerning defendant's intent or motive in carrying the concealed revolver was at least of doubtful propriety, but that point is not for our consideration here. See State v. Charles, Mo., 268 S.W. 2d 830, and the other cases last cited.

■ Evidence was heard concerning all the confiscated guns on the motion to suppress; that was essential to a determination of the motion. But, with the ruling on that motion, the question concerning the lawfulness of the arrest and the validity of the search went out of the case, except for appellate review, if preserved. Exhibit 2, the .32 caliber Iver-Johnson revolver on which the charge was based, was admitted without objection and, in effect, by consent. The other two pistols were in no way connected with the present offense and we hold that they were inadmissible; the one in defendant's shirt pocket could only have had a legitimate bearing on the lawfulness of the arrest and that issue had disappeared; the one found under the seat cushion could have served no possible purpose except prejudice.

These two guns were referred to in extenso in the opening statement, in the testimony of witnesses and in the final argument to the jury, over repeated objections. They were left in bags on the counsel table (and specifically referred to as such) and they were passed to the jury for its examination. In the State's final arguments references were made at least seven times to the fact that defendant had *three* guns and that this was an "aggravated" case, with the direct insinuation that defendant was guilty of some offense or offenses besides the mere carrying of the particular concealed weapon. These exhibits had no legitimate probative value in establishing defendant's guilt of the offense on trial. State v. Smith, 357 Mo. 467, 209 S.W.2d 138; State v. Wynne, 353 Mo. 276, 182 S.W.2d 294. And it seems perfectly obvious that their use *throughout* the trial was prejudicial to the defendant. We may note also that, when the jury was unable to agree upon the punishment, the Court, without any hesitation, fixed it at the maximum permissible under the statute, with no prior convictions charged.

For the errors in admitting Exhibits 1 and 3, in permitting testimony concerning them and in permitting references thereto throughout the trial, the judgment is reversed and the cause remanded for further proceedings.

All of the Judges concur.